IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELVIN AVON THOMAS,  *
      Petitioner,
   v.  *   CIVIL ACTION NO. CCB-10-2031

JOHN F. CARAWAY,  *
      Respondent.
                         ***

**MEMORANDUM**

Petitioner, an inmate confined at the Federal Correctional Institution in Cumberland, Maryland, filed the above-referenced case pursuant to 28 U.S.C. § 2241. Petitioner challenges, under the Privacy Act, the Bureau of Prisons' ("BOP") reliance on an Anne Arundel County police report to "make determinations adverse to [him]." ECF No. 1. Petitioner alleges that he has been unable to properly exhaust this claim as he has been denied access to the administrative remedy process. *Id*. The Government has filed a response (ECF No. 3) and petitioner has filed an opposition. ECF No. 5. The case is ready for judicial review.

**Background**

Petitioner is a federal inmate serving a 235 month sentence imposed on February 26, 1997.[1] His projected release date is September 12, 2013. ECF No. 3, Washington Declaration. He was committed to the custody of the State of Maryland on August 13, 1997, to serve a concurrent state sentence. *Id*. He was transferred directly from state to federal custody on October 27, 2003. *Id.*

---

[1] The sentence was imposed by now retired United States District Judge Frederic N. Smalkin in this District. *See United States v. Thomas*, Criminal No. 95-0175 (D. Md.).

Bureau of Prisons Program Statement 5100.08 governs the determination of the severity of an inmate's current offense. The statement directs staff to add the appropriate number of points to reflect the most severe documented offense behavior regardless of conviction. Staff is directed to consider the offense behavior on all sentences, including state sentences if there was no physical release from custody. *Id*. Petitioner's current offense severity is "Greatest Severity," thus classifying him as a medium security inmate. *Id.*

On August 1, 2007, petitioner filed an administrative remedy requesting correction of his offense severity rating. *Id*. His remedy was denied by the Warden on August 13, 2007. Petitioner noted a timely appeal to the Mid-Atlantic Regional Office on August 23, 2007. *Id*. On September 17, 2007, the Regional Director denied petitioner's request. On March 4, 2008, petitioner appealed the Regional Director's response to the Office of General Counsel. The appeal was rejected as untimely. On March 28, 2008, petitioner re-filed his appeal to the Office of General Counsel. His appeal was again rejected as untimely filed and petitioner was advised that he could re-file his appeal at that level and have it accepted as timely filed if he could demonstrate that his untimely filing was not his fault. *Id*. Petitioner failed to do so, instead initiating suit in this court alleging he was improperly classified due to the inclusion of the Anne Arundel County police report in his base file. His claim was dismissed due to his failure to exhaust available administrative remedies. *See Thomas v. Whitehead*, Civil Action No. CCB-08-978 (D. Md. 2008), ECF Nos. 11 and 12.

In April of 2010, petitioner submitted a request to staff complaining that his Unit Team would not issue him an Informal Resolution (BP-8) so that he could begin the administrative remedy process as to the use of the Anne Arundel County police report in his classification review. *Id*., Ex. I. Acting Warden Coakley advised petitioner on May 6, 2010, that his Unit Manager did not instruct

2

the Unit Team to refuse petitioner an Informal Resolution form for any complaint; rather, the Manager instructed the Team not to issue a form if petitioner was complaining about his Greatest Severity Public Safety Factor, Custody Classification and/or the security score of his instant offense. The Acting Warden advised petitioner that his grievance had been addressed through numerous requests, "as well as through the entire Administrative Remedy process since April 2007." *Id*. He further advised that the goal of the administrative remedy process was to resolve grievances through direct inmate-staff communication, and that petitioner had been advised by his Unit Manager to come to his office to engage in an effort to informally resolve the issues concerning petitioner's Greatest Severity Public Safety Factor, Custody Classification and/or the security score of the instant offense. *Id*. Any effort by petitioner to grieve his complaint regarding the inclusion of the police report and calculation of his Greatest Severity Public Safety Factor would have been deemed duplicative.

**Analysis**

The Prison Litigation Reform Act (PLRA) provides "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other federal law by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In *Booth v. Churner*, 532 U.S. 731, 733-34 (2001), the Supreme Court held that the PLRA mandated completion of the prison administrative remedy process before suit is filed. Although the PLRA does not define the term "prison conditions," the Supreme Court in *Porter v. Nussle*, 534 U.S. 516 (2002), described the rationale for exhaustion:

> Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmates's grievance might

3

> improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Id*. at 525 (citations omitted). A prisoner is required to properly exhaust all administrative remedies before seeking relief in federal court under 42 U.S.C. § 1983. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

The principles requiring exhaustion of administrative remedies, regardless of the applicability of the PLRA to habeas filings, have been applied to petitions for writ of habeas corpus. *See Skinner v. Wiley,* 355 F.3d 1293, 1295 (11th Cir. 2004) (although prisoner not subject to PLRA requirements, he was required to exhaust administrative remedies before filing habeas petition); *Carmona v. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001) (absent a showing of cause and prejudice, petitioner must exhaust administrative remedies before filing petition); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (petitioner must exhaust administrative remedies before challenging Parole Commission decision); *Chua Han Mow v. United States*, 730 F.2d 1308, 1313 (9th Cir.1984) (claim regarding BOP's improper calculation of time served not properly before the court as defendant had not exhausted administrative remedies); *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981) ("federal prisoners complaining of events or conditions relating to their custody must exhaust their administrative remedies before habeas relief may be granted"); *United States ex rel. Sanders v. Arnold*, 535 F. 2d 848, 850-51 (3d Cir. 1976) (federal prisoner cannot challenge a parole decision by way of habeas petition until he has exhausted available administrative remedies); *see also Asare v. U.S. Parole Comm'n*, 2 F.3d 540, 544 (4th Cir. 1993) ("If Asare is dissatisfied by the release date established by the Bureau of Prisons, she can exhaust the administrative remedies that

may be available, and, if she remains dissatisfied, she can apply to a United States district court for a writ of habeas corpus, which ultimately can be appealed to a court of appeals.").

The BOP has established an Administrative Remedy Program for inmates to resolve concerns related to their confinement. *See* 28 C.F.R. § 542.10 *et seq.* An inmate may first attempt informal resolution. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within twenty calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response to the formal complaint, he may appeal, using the appropriate form, to the Regional Director within twenty calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate is still dissatisfied, he may appeal the Regional Director's response to the Office of the General Counsel, located in the BOP Central Office in Washington, D.C., using the appropriate forms. The inmate must file this final appeal within thirty calendar days of the date the Regional Director signed the response. *See id.* An inmate is not deemed to have exhausted his administrative remedies until he has pursued his grievance through all levels. *See* 28 C.F.R. § 542.15(a).

The uncontroverted evidence shows that petitioner failed to file a timely appeal to the Central Office. Thus, as previously found by this court, he failed to fully and properly exhaust the administrative remedies available to him prior to a federal petition, and his case must be dismissed.

Even if the court excused petitioner's failure to exhaust, his claim would still fail. The Privacy Act requires agencies to maintain records used to make determinations about individuals "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). It grants individuals certain rights to obtain access to agency records pertaining to them and to request

5

amendment to records they believe to be inaccurate. *See id.* § 552a(d)(1), (2).

Certain federal agencies are permitted under the Privacy Act to enact regulations exempting themselves from various provisions of the Act. *See id.* § 552a(j). Pursuant to 28 C.F.R. § 16.97(a), the Inmate Central Record System, also referred to as the BOP's central file, is exempt from having to remove or change information in an inmate's file. *See id.*; 5 U.S.C. § 552a(g)(2)(A). Thus a prisoner is not entitled to injunctive relief to correct allegedly inaccurate information maintained in his file. *See White v. United States Probation Office*, 148 F.3d 1124, 1125 (D.C. Cir. 1998) ("[P]resentence reports and BOP inmate records systems are exempt from the . . . Act."); *Doyon v. Dep't of Justice*, 304 F. Supp. 2d 32, 34 (D.D.C. 2004) ("Records maintained in BOP's Inmate Central Record System, including inmates' presentence investigation reports, are exempt from the Privacy Act's amendment provisions. . . . Plaintiff's claim for amendment of the records is therefore barred."). As the system of records which contains petitioner's custody classification form is exempt from the requirement of the Privacy Act, his claim must be dismissed.[2]

A separate Order follows.

| June 10, 2011 | /s/ |
|---|---|
| Date | Catherine C. Blake |

---

[2] Further, petitioner has failed to demonstrate sufficient injury based on the alleged erroneous information. Petitioner's claim that his allegedly improperly calculated custody classification score prevented him from being transferred to a lower security institution is unavailing. Prisoners do not have a constitutional right to be housed in one prison versus another. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Additionally, Case Manager Washington avers that petitioner's PSF of Greatest Severity would not prevent him from being eligible for a low security level institution should his total security points decrease, nor would it hinder him from consideration for a residential reentry center placement. ECF No. 3, Ex. 1.

6

United States District Judge